Good morning. May it please the court, appellate counsel, my name is Enrique Gonzalez, and I represent the appellant Manuel Osete Espinoza. I would respectfully request that four minutes of my allotted time be given. The court has raised an issue so responding to this case here with regards to exhaustion of State remedies. In this case here, Your Honor, the initially the appellant filed a petition for habeas corpus before Judge Collins. The first petition for habeas corpus of the State Attorney General's office filed an answer and a motion to dismiss, as did the attorney for the respondent, Sheriff Estrada. In the motion to dismiss, they alleged that we had not exhausted our remedies, in which case the appellant then filed a petition for action before the appellate courts of Arizona. In Arizona, according to the state, excuse me, Riley v. Superior Courts of 124 Arizona 498-1979 case, there is no direct right of appeal in state court from a civil contempt finding. The only available remedies... Did you go to the court of appeal? Yes, we did. But the only remedy available was through a petition for special action, which is an extraordinary writ where there is really a two-fold finding before special action would be exercised. Yeah. Yeah. This is all abstraction. Where are you going? The point is that the courts, the Arizona Court of Appeals, denied our petition for special action without comment. They did not... Appeal that to the Arizona Supreme Court? No, we did not. What explains that? That seems that may be a failure to exhaust. That would be, except that there is case law, the Supreme Court case law, that talks about certain circumstances where a failure to exhaust your state appellate remedies may be excused, so to speak. In the case I make reference to is... What you're up against here is a remand for an evidentiary hearing. The Federal Court remanded this to Judge Nichols for an evidentiary hearing. You've got a finding of fact that continued incarceration is coercive and not punitive. You're really up against it off of that finding of fact, because unless you can show that that's clearly erroneous, it seems to me to use the vernacular, you're dead in the water, because that's the issue. I understand that argument, Your Honor, but I believe that this Court is really our only remedy in which to seek redress here. But you've got to show that that's dead wrong, you know, clearly erroneous. Let's put it in those terms. It's got to have the stench of a 7-day-old dead, unrefrigerated fish, according to the Sixth Circuit. And there's plenty of explanation in Judge Nichols' decision here to support the idea that this is coercive and not punitive. And if that's the case, how do you get anywhere on habeas corpus? Judge, our position, again, has been that because my client is unable to get out, this is a situa But the daughter, everybody says, will liquidate and come up with the money, but he keeps telling us not to. Your Honor, the problem with liquidating is that there's extensive litigation ongoing in Mexico. The property or alleged property that my client allegedly owns is all in Mexico. He's stuck in a Tangled up by him in all kinds of confusion. Well, part of the record talks about how one of the appellate courts with a substantial piece of property, which is the foundry property, the appellee in the Mexican court sued the appellant's siblings for title of that property. She has won that lawsuit. Now, the siblings have appealed, but even though she's won that judgment, she still can't liquidate that property so that she can get money out of this. But the way I read this record, not only has your client not lifted a fingernail to help, but he has dragged his feet and resisted every attempt whatsoever to comply with the legitimate orders. So then the court says, this is, you know, it's not punitive. I mean, he's just stuck his foot into the ground and won't take it out. And he can if he wants to. The concern that I have is that my feeling that it is punitive after three years. That's your feeling, though. And we're an appellate court, and we've got a state court finding a fact after an evidentiary hearing that says that it's not. You've got a high hill to climb to crime to convince us that this is a bad foundation for the ruling. Feeling is really a bad choice of word for me. What I would submit here, if you look at the factors, there's exceptional circumstances here that I think takes us outside the realm of this exhaustion issue. Those exceptional factors are his age. He's 72 plus years old. The record is clear that he suffers from a heart ailment. And there's at least a federal supplement case which cites the Granbury U.S. Supreme Court. It's Sportacus v. Overton. It's cited in 272F Supplement 621. In that case, the court considered the appellant's grave medical condition. Is there a doctor in here that says because of a medical condition he cannot comply? There is no doctor. We did submit an affidavit when we filed a motion in the trial court down in the Superior Court, and there was testimony from my client that has now been controverted by the appellee. Carmen testified she offered to sell the property and used the money to get Respondent out of jail, and he told her not to. There's been substantial properties that have been transferred to the daughters, and the daughters have been willing to turn over the property to the mother. And he tells them don't do it. That was her testimony, which we disagreed with. Well, you disagree with it, but the court found that it's correct. It's credible. One of the issues is that we did attempt to resolve this case by submitting property in lieu. This property, the family had agreed to turn over this property to the appellee. And from the get-go, the appellee has said we won't accept it unless it's cash. The bond in this case, Your Honor, is either cash or secured bond. We don't have the cash.  How then can my client fight and challenge the constitutionality of being held in court? I think this violator of a due process. He can't get out of jail. He can't resolve the transaction in Mexico. Your client is the author of all of his own problems. The minute he was looking at these orders, he started hiding the property everywhere under the sun. He disposed of it. He hid it. He transferred it. He took it to Mexico. He pulled every stunt he could to avoid paying a penny. And now he says, gee, because I did all of that, now I don't know how to unravel my own Gordian knot. You've got to let me go. I think I'd better stop to reserve some time with the court. Thank you. Thank you. Good morning. I'm pleased to report my name is Delisa Scott. I represent the Real Party in Interest, Apolice, Sylvia Osete, the wife. And addressing sort of a factual issue up front, everyone seems to forget the catch. We're talking a lot about property. The record is clear that there was that $420,000 that if you read the entire trial, Mr. Osete never explained where it went. He also never explained the fact that he continued to operate all of the community businesses until he transferred them away in 2000. Where all the money went from that?  Where do you stand on exhaustion of remedies? Judge, I will confess my somewhat difficult time addressing this issue. I'm a civil divorce attorney. And these issues, although familiar with the doctrine, the intricacies of it, I am not experienced enough to speak in detail about. But I do agree that the appropriateness of exhaustion of remedies would include an appeal to the Arizona Supreme Court. I'm not familiar with the exceptions that Mr. Gonzalez referenced, so I can't rebut those directly. But I do believe it would have been appropriate to appeal to the Arizona Supreme Court. We appreciate your candor. Lots of lawyers try to slide their way through this. I'm a divorce lawyer, Judge. This is rare. I don't think there's ever been a divorce lawyer in Arizona who's appeared before this panel. You get high points for candor. It might not help your position, but you get high points for candor. And so, Judge, if I can, I had a different point of view. Let's not leave that for a moment. Even though it's not a divorce doctrine, a party can waive, in court specifically, waive the exhaustion requirement. So if your client is willing to do that, you won't have to go back to war over exhaustion and do all that. You can start getting to the issues in the case, which the party skipped over exhaustion to get to. So would your client be willing to waive the exhaustion requirement? It wouldn't require saying that it is a problem, but just simply waiving it, then we move on and decide the case. Absolutely, Your Honor. To deal with the merits today, I think that would serve judicial economy as well as the interests of the parties. I think additional procedural delay would serve nobody's interests at this point. Do you think you have the authority from your client to make that waiver here in open court today? Indeed, I do, Your Honor. My client is present in the courtroom. If the court would wish to have me confer with her to secure that, but without doubt, I'm intimately familiar with her, her philosophy, her financial circumstances, and there's a long history of procedural delay in this case already, which has caused great consternation and expense to her, and I have no doubt that to obviate yet more unnecessary procedural delay to get to the merits would, without question, be welcomed by my client. All right. Thank you. Thank you. So addressing the due process issue, Judge, I guess the question is I've had a hard time sorting out exactly what the claim is, but what I'm able to synthesize is this. Well, Judge, at some point, his civil contempt morphed into criminal because how long he's been there. Of course, our position is that he's choosing to do so. Let's assume that's the case. The due process in a civil contempt case is defined by U.S. VAers, and the U.S. VAer says because civil contempt is nonpunitive and avoidable, which is exactly the finding not just by Judge Nichols at the lower court, but this was reviewed by Judge Collins at the Federal District Court. He read the entire record below in making his decision and upholding it with the same strong factual finding. The protections for sanctions are far fewer. This civil contempt may be imposed in an ordinary civil proceeding on two grounds, notice and an opportunity to be heard. So first of all, let's assume that the general due process argument I'm to address. Here's the due process to which Mr. Osete was entitled, notice and an opportunity to be heard. He clearly had both. The brief goes on to the appeal goes on to suggest that there are three areas of deficiency in the due process. One, right to a jury trial. Well, Mr. Osete never requested a jury trial. Not only did he never request one, which, of course, his failure to do so constitute a waiver of the request, but at the lower court he's never appealed this as an issue. So there's two bases that we can't even consider that as a due process violation. Secondarily, the argument seems to be that the standard of review should have been beyond a reasonable doubt. To the contrary, this Court found in 1993 in the Dual Deck Video case that the standard is clear and convincing evidence. So the appeal fails on that basis as well. And thirdly, the request seems to be that under Crawford, he wasn't given the opportunity to confront the witnesses because these documents that were admitted. The Court may or may not have been able to sort this out from the record. But what happened is we had duly certified records on the first day of this four-day trial, which spanned several months. And then what happened at that, for the first time we heard they needed to be uphost sealed. Now, we litigated that issue in front of Judge Nichols, and he found under our local rules of evidence that they were appropriately admissible under our rules. Now, Crawford suggests whether local rules of evidence can or cannot obviate a Sixth Amendment right to confrontation, and Crawford speaks very clearly to the question of testimonial evidence. So testimonial evidence under Crawford, the wife of the Court is probably familiar, gave a statement, I believe, to police during the interrogation process and then chose to have her spousal immunity in place and not to comment at the trial. And the question of Crawford was whether or not a local court's evidentiary rules and findings, and again, I'm having to intuit this is what he means by it because the brief isn't clear, but whether, in fact, our local rules and our judges' ruling on admissibility of those documents somehow violated his right to confrontation. Now, these are not testamentary documents. Crawford says at the very end, while not exhaustive, here's a list of some of the kinds of things we mean. This was the man's wife testifying to the police officers. Clearly testamentary. How far that issue goes. These are not documents that are testamentary. These are real estate transactions. The documents that the judge admitted, and incidentally, anticipating that this might be a problem, two days into it, we went, two days into it, which was several months later, we took the opportunity, and the record says, gee, you know, I wonder if Mr. Ossette might choose to make this a basis for appeal. So we went back and went to Hermosillo in the interceding time and got all of Ossette's documents at great expense to Mrs. Ossette, and essentially then submitted the Ossette documents, which are exactly the same documents by way of foundation that Mr. Ossette introduced. They're his own lawyer. So he introduces those documents properly, in his view, authenticated regarding the nature of ownership and so forth on these transactions, but when it came to the appeal, suddenly none of the records should have been admitted without arguably testimonial. Because starting a record is not what we're talking about here. It's whether this was testimonial. And so I'm assuming that that's what he means when he cites Crawford as a violation of due process. So the three basis that he gives for due process, no jury trial, never requested, wait. The standard of proof should have been beyond a reasonable doubt, not according to this Court's standard of clear and convincing from 1993 in Duldeck. And then thirdly, the issue of Crawford, which simply doesn't have any basis in either fact or law, especially if it's a little disingenuous given the fact that I objected to all of their documents at the trial, which they got in anyway. So having said that, Your Honor, I'm not sure where else to go. The rest of the appeal goes on to speak to the factual basis. It talks about how everybody simply got it wrong. Mr. El Cente went to court. He turned out his pockets and said, Your Honor, I simply can't pay. And he never demonstrated that he couldn't pay. He said so. And after a four-day trial, which he waited two years to ask for, and one of the issues in the brief that's interesting, he says, well, gee, this lengthy incarceration. But he didn't do anything for the first six months. For whatever reason, he was laboring under the misimpression that in a civil contempt case, there is a six-month rule. And indeed, in criminal, that's a fact, but in civil, there's no such restriction. In fact, Bagwell, cited by Mr. El Cente, specifically uses the word indefinite. He can choose to stay there as long as he wants to. So he waits six months and does nothing, then files his motion in six months saying, well, gee, Judge, it's now been six months. I'd like my get-out-of-jail-card free, please. And to which Mrs. El Cente then said, there's no such rule. And then in earnest began his efforts to do everything but pay the money. In fact, a lot of the transactions and the fraudulent conveyances happened, some of them very near to the time of his arrest. The decree of legal separation was entered in 1998. And right after the judge made the orders in 1997, as the courts already noticed, the fraudulent conveyance began in earnest. And in fact, you know, we could argue theoretically that this web he has created – let's assume Mr. Gonzalez comes up here and says, you know, Your Honor, let's assume he did it all wrongfully. Nevertheless, he has created a web from which he cannot escape. Therefore, he's incapable, and therefore, you should consider his release. No one seems to remember at the lower court level the money. He had a lot of cash. And so all of this tangled web he has chosen to weave does not explain the fact – one of the findings is that when he did the fraudulent conveyance, that litigation showed he had $60,000 to $100,000 in his safe. He took $420,000 cash. He continued to run their businesses. Mrs. El Cente's belief is he still does to this day. So there was cash at a minimum. He never paid $5 of the $10,000 in expelled amendments. Not $5, not a dollar, not a penny. And, in fact, as the court already commented, not only did he not assist in transferring these documents, he began in earnest to do just the opposite, as Judge Nichols said, but began in earnest to do just the opposite. So I would submit, Your Honor, that there's absolutely no basis to consider the appeal and ask respectfully that it be denied. And I don't know if the panel has any questions. Thank you. Thank you. Please, the Court. It is ironic that had this been a criminal contempt instead of a civil contempt, the law is now that a criminal contempt is punishable by four months' imprisonment, two years of probation, and a $750 fine. It's been 36 months. It's been three years and over 1,000 days, and my client has been incarcerated. Consistency is the hobgoblin of small minds. What happened to the $420,000? Part of the ---- I cannot account for the $420,000. The testimony at the evidentiary hearing is that some of that money, as I understand it ---- Did he take it out of the account? Yes. Apparently the money had been transferred to Mexico. However ---- And now he doesn't grace us with an explanation of what happened to it. I believe he did explain that the money was because he had these businesses in Mexico. When the appellee started garnishing monies, he had to close his businesses down. And they ---- He sees it as a setoff. Well, that's exactly what happened, because in Mexico, he had to pay off the employees that he had to lay off. And in fact, what ended up happening, he lost all his businesses because of not only the garnishments. Now, I disagree with some of the facts that the appellee has raised with regards to their argument. This is a situation where they've never disputed that the appellee has received over $1 million in cash, all the properties in the United States, shares, a stock and restaurant, miscellaneous personal property. That has to be addressed to some other court, not us. I understand that, Judge. But what I would point out to the Court in the case that we cited was the Bagwell Court, International Mines v. Bagwell, the Union Court. In that case, the Supreme Court said that even in civil contempt cases where there is a serious contempt at issue or the amount of fine is substantial or the time incarceration is lengthy, that criminal procedural protections, including both the jury trial and proof beyond a reasonable doubt, are required. In this situation, Judge, that was not given to us. The trial court, the district court, basically affirmed what Judge Nichols did in the Superior Court. And my argument has been it's a due process violation. It cites the Bagwell Court, even though it deals with fines, I think it's precedent with the type of situation that we're forced here. So if there aren't any other questions, I would submit them to the Court. Thank you. Thank you, Your Honor.
judges: Trott, T.G. Nelson, Paez